Good morning. My name is Stephanie James and I'm here today on behalf of the Appellants, Officers Johnny Cornelius and George Sweeten, who are employed by the Madisonville Consolidated Independent School District. I would like to reserve five minutes of my argument for brought by Malia Byrd, a Madisonville student, against the officers for an incident that happened at a school basketball game on school campus. Now this is an appeal from a collateral order of the trial court denying summary judgment on the basis of qualified immunity. So in that context, this court's review is somewhat limited and it is limited to really two things. Pure questions of law, such as whether the officers violated a clearly established right, and second, the materiality of any fact disputes found by the district court. So on that second component we can look at the plaintiff's version of the facts and accepting those as true, look at the reasonableness of the officer's actions. Now the bulk of my argument here today is going to focus on the first question, the purely legal question of whether their view, what is that conduct that we are required to accept? Because you're right about our limited standard on an interlocutory qualified immunity appeal. We've got more cases than I care to think about that discuss that issue. So we've got to figure out what facts are we accepting for purposes of this and then we have to measure them against the excessive force standard. So what are those facts? Absolutely, Your Honor. So those come from the affidavit of Ms. Byrd, which is on page 373 of the record on appeal. And then we've got affidavits from the two officers and from the principal who was involved in the altercation. So to the extent they've said some facts which she does not contradict, then those are uncontroverted facts in the record. We also have a short video clip of the encounter, which is in the record. Again, to the extent it shows something that she does not contradict, that fact is for you today. So here are those facts. She was at a basketball game at the school gym in the evening. She got into an argument of some sort with the school principal, Ms. Golden. Ms. Golden asked her to leave. She did not want to leave. Ms. Golden called the two officers who were working at the game over to help they approached. They asked her to leave and she refused. Now, Officer Cornelius says that she said, you can't make me. She doesn't dispute this. And in fact, in the magistrate's opinion, she does find on page 466 of the record on appeal that Byrd refused to leave. So then Cornelius says he tried to grab her arm and she jerked away. Again, she doesn't controvert this in her affidavit and it is shown on the video. Which in the video I see an officer carrying a cup of coffee. Which officer is that? That was Officer Cornelius, I believe. Yes. I see him walking over there with the cup of coffee. Without a lid on it. I, yeah. Yes, yes. Okay, so then she says you can't make me, he tries to grab her arm, she pulls away. Then this is where it gets a little bit murky and we really have to look at what the facts say. So the officers say she kicked and flailed towards them. She says, I was not being violent, I didn't make contact and I wasn't trying to harm them. However, if you look at their brief to this court on page 20, they admit, they concede that she swings her arm up and around. Well, that's what the video shows. And it is shown on the video clearly at 7 seconds. You see that left arm. That's what I was about to say. Frankly, I really don't care what the brief says at this point on that point because I saw it with my own eyes. Alright, so you see the what we know is undisputed. They exit the door. The video ends. The officers say once they got her on the ground, she tried to get up. She doesn't discuss anything about that in her affidavit. She said she wasn't resisting. What she says is, I think what she specifically says is that she wasn't trying to harm them. I don't believe the word resisting shows up in her affidavit. She says I wasn't violent and I wasn't trying to hurt them. But so we have to construe in the most favorable to her, she doesn't have to use the word resisting, but doesn't the case turn on whether she was or whether she wasn't in terms of what the officers then did to put her on the ground and all that, which she alleges. I mean, it seems to me the material issue of fact is, was she resisting or not? And maybe I'm oversimplifying the record. Please tell me she says she wasn't. They say she was. We can't really get to the genuineness of that dispute, but it seems material to me. Respectfully, two points on that. I don't think it's dispositive because there are two prongs to the qualified immunity analysis. Reasonableness is one. Clearly established law is the other, and I think she absolutely loses on that one. But to answer your point on is there a fact issue. First, her subjective harm them. This court has said in case after case after case that the suspect's intent does not matter. The question is, what did the officers perceive at the time and was that reasonable? Now, we just said the video unquestionably shows and they admit she flailed her arm and that they told her to leave and she refused. Those are two facts that are undisputed, right? There is case law from this circuit which demonstrates that that is resisting. So in the Betts versus Brennan case, this is a case came out this year. There was a suspect who's literally said, I'm not trying to hurt you. I'm not being aggressive. I'm not resisting. An officer grabbed for his arm and he batted the arm away. This court said that's resisting in the Buchanan case. The court noted that there are two things that justify use of force resistance or failing to follow an officer's commands. Let me go back to something Judge Wilson was talking about. This is a summary judgment case. I am looking right now at her declaration. I'm looking at paragraphs seven and eight of her declaration. Besides that declaration, I know there's declarations from the principal and the officers, but is there any other evidence of what she says happened? In other words, am I going on this declaration and specifically paragraphs seven and eight because those seem to be the only material ones? That is it. There is a declaration from her mother, but of course her mother was not at the game. Okay. I just want to understand that because Judge Wilson, of course, is correct that if there is a genuine fact dispute that's material, we're not allowed in this appeal to say, well, I don't really think that's genuine, which is just outside our jurisdiction. That's right. So this court can look at the pure questions of law, and we know in the qualified immunity context there is one pure question of law, and that is whether the officer's conduct violates a clearly established right. Now, we know that once the officers plead qualified immunity, the burden shifts to the plaintiff to define that clearly established right for the court. The first thing I want to note is if you read the magistrate's opinion, there is no discussion at all about this prong, other than saying the initial kind of here's how qualified immunity works. The magistrate also seemed to say that—I don't remember if it was a man or a woman—the magistrate could not tell from the video anything that was transpiring, which I have to tell you I cannot fathom. Which I think is fair. This court has said in the context of video evidence that the court of appeals can view that independently and render its own conclusions from it. I think that's the Scott v. Anderson case. I mean, the video is not ultra HD 4K, but I could see exactly what was going on in that video. Now, it ends, and that's to me the most important point, is they push her out the door. She's obviously resisting. She's taken a swing at one of the officers. I just can't unsee that. But they push her out the door, and so I have to obviously have to recognize the limits of the video. What I don't understand is what she's saying here in paragraph 7. Is she purporting to describe what's happening on the video? In other words, what's happening at the time that video is showing the altercation? She says during the encounter, Cornelius spilled his hot coffee on me. OK, well, I see in the video him holding coffee and going towards her. So I just I'm not sure what she's what the time frame of what she's talking about is, I guess, is where I'm coming from. I'm not either. I think from reading her declaration and as you describe what the video shows, I think it purports to describe the whole encounter. So perhaps a portion inside and then as they moved outside. But you can't tell the exact timing on it. And I agree with you on that. And it doesn't describe how she ended up on the ground. It doesn't. So we can look at the declarations from her and the officers that talk about that. And I think the point is, everyone agrees the officers took her to the ground and that once she was on the ground, a knee was placed on her back and her arms were put behind her to cuff them. Yeah, there's no question that that's what she's saying here. Placed his knees on my back while twisting my arms so hard it caused me unbearable pain. So I have to take that as true, I think. I mean, I don't know any evidence that would contradict that. Now, the question is, does that does that does that standing alone violate clearly and clearly established law for qualified immunity purposes? That's a serious question. And that's the key analysis here. So we don't what Bird has asked this court to define the clearly established law is, you know, generally, if a suspect is not resisting or no longer resisting, you can't use force. Respectfully, she's painting with too broad a brush. I guess the question is, if she's resisting in the video inside and she throws her arm at the officer and all that, they push her outside. Video stops. Is that resistance enough then to do what they did in terms of putting her on the ground? Or if she's just if she stopped resisting outside, that's it. I'm now outside. I'm not trying to hurt you. Whatever whatever she says, then does the calculus change? I think the answer is, respectfully, Your Honor, we don't know the law. But if we don't know that defeat summary judgment, doesn't because she has to show the laws clearly established and that there is a case out there that is factually similar that would inform the officers that their conduct was illegal. Well, I think I think with I think to to circle back to what Judge Wilson's saying, he's asking about facts, not law. So I think his question is very well taken. However, I would like to know where she alleges or claims or represents that she stopped resisting outside when they took her to the ground. Where is that? Where is that stated by her? I don't believe it's stated at all. In fact, our position has been that she was never resisting, which I believe is clearly contradicted by the summary judgment evidence. The real big question for this court, in my opinion, is how do we define the clearly established law? It's our position in this case that the law that she sides needs to take in consideration the school setting. Now it has it. She cited generic. Well, what case to what case? I get what you're saying there. It's an interesting argument. What case would I look to to say in a school setting that we have a different sort of standard for an excessive force? Your Honor, Judge Clement authored an opinion in the Gonzalez v. Huerta case in 2016, which I think is directly on point. So that case involved a husband of a husband of a teacher who came to school after the workday to pick up his wife. Right. He parks his car in the school parking lot. A school police officer comes up, asks for his I.D. He won't give it to him and he gets detained. He then files a Fourth Amendment claim against the officer claiming wrongful detention. And the officer, of course, pleads qualified immunity in defending against qualified immunity. The plaintiff says, look, there is a Supreme Court case directly on point that says you cannot detain me for failing to provide an I.D. That case is seemingly directly on point. However, as Judge Clement wrote, it does not address what happens in a school setting. Judge Clement noted that the Supreme Court has routinely reconsidered the scope of individual constitutional rights in a school. So in that case, he was on school property. And for that reason, the court found there was no clearly established law. Then just last year in the J.W. versus Paley case, this court considered a similar a similar situation. This one involved a special education student who was trying to leave the school and was tased by a school police officer. In that case, the court was confronted with the issue again of whether the law was clearly established. And the court noted that there are some cases, like the Curran case, which says Fourth Amendment claims can be brought. But there is at least one case in this circuit, the Flores versus DeSoto case, that says they cannot. And so this court held last year, and this is a quote, our law is at best inconsistent on whether a student has a Fourth Amendment right to be free of excessive force applied by school officials. And so for that reason, this court last year said there is no controlling authority. It's not clearly established. And so qualified immunity was granted. If this court held last year that the case law was undivided and not clearly established, then it certainly wasn't clearly established four years ago when this incident happened and could not have informed the officers about the propriety of their conduct. The next thing I'll just briefly. Well, I'll give back some time and leave this for my rebuttal unless you guys have any questions for me that I don't go over. Well, we'll take the 17 seconds. Thank you very much. You'll have time for rebuttal. Ms. White. Please, the court. Shelby White for the athlete, Malia Bird. First, I'd like to talk about Judge Wilson's question that you asked the appellant earlier. If she was resisting when she was inside, are they allowed to use the force that they used once she moved outside? Where is the assertion that she stopped resisting once they took her out the door? Where did she say that? She says I was never resisting, but I would also point to paragraph 12 of her declaration, which says there is absolutely nothing I did that justified the defendant's actions of assaulting me. Okay. Well. Good. But the video shows her resisting. Yes, but it does not show what's happening outside. And she's saying, she says. But back to Judge Duncan's question, where does she allege that she stopped resisting? I think so you look at paragraph 8, and paragraph 8 has specific facts, but you also see that those facts are the direct contradictions of what Cornelius and Sweeten say were the actions that justified them thinking. Well, I got to tell you. So, I mean, you can tell me that I'm wrong and you won't hurt my feelings, but the video seems to blatantly contradict paragraph 8 of her declaration. I was not violent, nor did I ever attempt to harm anyone. I just I see her swinging at the officer. And I mean, to be perfectly fair and not to hurt your feelings, I do think you're wrong about your. Okay. Okay. How in the world am I wrong about not? I saw it. I think the issue is that when we look at what the video shows, we don't have the context. We don't have an audio video. We do not see what has happened beforehand, which is why Golden has pulled. What does that matter? She's swinging at him. Well, I think they also that they claim that she made contact with him and the video doesn't. So what? So she swung at him. Maybe she missed. What does that matter? So what I would what I would argue is that that video does not. I don't think that because of that video, you can necessarily classify that as resistance because we do not know what they said when they approached her and what they intended to do. Okay. Look, I'm not saying I'm not saying that you lose if I disagree with you on that point, because the video stops. Right. So I have to accept. I think that I don't see everything that's happening. So what? Let's assume that I think, well, the video does show some resistance, but where is it? Where does she assert that? Okay. You know, when they had me outside, I said, all right, you can arrest me. I'm not going to put up a fight. And yet they did these bad things to her. Where does is that in the record somewhere? Well, I do think that is paragraph seven and paragraph eight where she is saying, okay, well, show me. I didn't hit anyone. I didn't strike anyone. Okay. I think paragraph seven is the key. It's the most detailed paragraph where she says what happened. And I have to accept that. I have to accept that on this. And I think you're right that she doesn't use the phrase I was not resisting. But what she does say is everything that they said she was doing as a resistance, she says I didn't do that. And so when they said she struck me, she said I didn't ever make contact with you. Flip to paragraph eight. I didn't strike or kick. I didn't kick or strike Cornelius. I didn't hit Sweetener or any other person. I was not violent. I never attempted to harm anyone. Those to me are denying the resistance that's alleged. And I think that is sufficient under the law. And when we look at Curran specifically is, I think, by far the most on-point case because that involves two different use of force incidents. One is pre-handcuff and one is post-handcuffing. And the student is at school. She is waiting. I think she has missed a bus or a ride that is supposed to take her to an off-campus event or arts center or something like that. And she's using her cell phone, which is against the rules. So a teacher comes up to her and says, you can't use your cell phone. She says, I'm trying to call. Like, this is important. And the teacher calls a school resource officer over. And that school resource officer, the student does not deny that she initially resisted. She says, like, I swung back and I jerked my hand. I think maybe she took a swing at him. And then she says, but he had me under control. And then, after I stopped resisting, he slammed my head into the wall. And then the student is put in handcuffs and walks down the hall, and that's the second head slam. And this court said there is a temporal piece between where she admits that she resisted and then has stopped resisting, and then she gets the head slam. I get what you're saying. I mean, look, I'll tell you right now, head slamming a restrained suspect violates clearly established law. I think a number of cases of ours says that. I probably wrote one of them. But, again, I'm looking back at paragraph 7. I see she describes certain things the officers did to her. Spilled hot coffee on me, ripped my shirt, placed knees on my back while twisting my arm so hard. I get that kick in my arm, grabbed my phone out of my hand, threw it to the ground. Okay. Then she says, visibly bleeding, I was placed in handcuffs. So should I take from that these things that happen, which may or not be excessive force, they happened before she was placed in handcuffs? Yes, and that's what Curran says is we have a use of force pre-handcuff, and Curran says that's enough. That's still a use of force. So we're looking at these things pre-handcuff. Yes, Curran goes so far as to say that is a grand obvious use of force, that we know that once someone's not resisting, you can't slam their head in a wall. And, I mean, the point is she gets slammed twice, once pre-handcuff and once post. But the court says both of those are excessive. What year is Curran from? I don't remember. Huh? What year? I'm sorry. 2015. 2015. Okay. And it's been cited favorably as recent by Judge Clement at the end of 2021 for that same proposition that when someone's not resisting, you cannot use force against them. Thank you. The second issue I want to talk about is the school setting issue. And if you all remember the Morsi v. Frederick case from the Texas or U.S. Supreme Court way back in the day, it's the bong hits for Jesus. Bong hits for Jesus. Yes. The key factor in that case, they kind of do a who, what, where, when, why analysis for whether or not you're in a school setting. But the ultimate factor that they decide on, on whether or not we get to infringe on your, in that case, First Amendment rights here before the amendment, is what is the, how does this interfere with the educational mission? And they said when you say bong hits for Jesus, that is obviously encouraging drug use, which the school, part of the school's educational mission is to blatantly discourage that. That case is probably outdated now, don't you think? I'm just, don't answer that. But I do think that that idea of what is the educational mission and how is it being accomplished in this setting, that's the important analysis here. And when we look at being at a high school basketball game, it is obviously post-school hours, it is not an educational event, at least for fans, and it's open to the public. So anyone can be there. And the idea that the school officers are there just to protect only the students, I think is, that's not true. When you look at a school resource officer, for all the cases that they have cited, it is happening during school hours and it is a student that is disrupting class. And that, I think, is the one thing that kind of distinguishes Curran from the rest of them, is that she's not in class and she's not disrupting anyone. She's actually standing outside, you know, outside the school waiting for a ride. And so this idea that you are being disrupted in school, we have always said, this court has always said, that's corporal punishment and that's a different scenario. But we are not corporally punishing Malia Bird for being on the wrong side of the stadium and for wearing a nose ring at a basketball game. Well, she was arrested. Yes, and I don't think that there was a basis to arrest her, to be perfectly clear. Well, okay, fine. What was she arrested for? Assaulting a police officer. Okay. I mean, she makes a statement, that was a false accusation. I didn't do that. What happened with the charge? I assume she was charged with that. I don't know. I know she was suspended. I'm not sure. Okay, maybe it's not in the record. I'm not sure what happened to the charge. We don't have a heck situation, if that's your concern. Okay, right. Which makes me think that she was never actually charged. Fair enough. But when we look at the educational setting, when we talk about corporal punishment, we are talking about you have to be here at school. You have to be with these other students. And it is important for us to finish our educational mission and to be able to teach you and the other students. And that's why a teacher is allowed to use corporal punishment or use force against you, because the teacher is there to teach you and to discipline you. That is part of the duties. A school officer is never there to discipline you. Across the board, we've always said the use of force by a police officer is to gain compliance. It is not for punishment. It's never for punishment. And so when you have this situation here where you're at a school event, the officer is acting as security for everyone who's there, not just the students. And it is post-school hours, and it's unclear in the record if these are even employees of the school. They just say in their affidavits that we were working security at the game. They don't ever make the assertion that they are school officials, which is how I think J.W. Pally and T.O. are trying to get into that sort of area. If you're not a teacher but you are a school official, how do we classify you? How does the Fourth Amendment apply? They've never even made the assertion that they're school officials, which is how the — Well, but they were following the directions of the principal. Yeah. And without flinching, they did exactly what she wanted them to do. I think that's part of their duties, is that they are to follow orders. Well, what if the orders are too severe or something? I don't think they should automatically follow what the principal says. I mean, I would agree with that, yes. And that's why I think we run into an excessive force situation is because they're acting as officers here. They're not acting as teachers. Right. And so they need to use their reasonable officer judgment, not I'm a teacher enacting corporal punishment judgment. Those are different standards, and that's a different scenario. And so, you know, kind of the hypothetical I thought of is if we had a student that came after hours to school at midnight and tried to trespass and sneak into the school, you know, school pranks are kind of a popular scenario, and an officer caught that person then, we would not say the officer gets to beat them up as a corporal punishment scenario. You know, the officer is there to enact officer rules and to, you know, arrest them, but they're not there to punish. Could you remind me what are the natures of the injuries that she alleges? So she alleges psychological injuries, kind of saying I was, and that's paragraph 12, the officer has placed me in fear of losing my life. I've suffered bodily injuries, extreme severe and mental emotional, severe and mental emotional, mental and emotional distress, agony, and anxiety. And then she mentions her physical injuries, which were her arm was in it. She had to go to the hospital. Her arm was in a sling. She had severe bruising, scratches, things like that. Okay. Do you, I mean, I take it, I seem to understand the counsel opposite's argument that there should be a different excessive force. Calculus in the school setting, I know you're talking about that quite a bit, but do you just contest that right on its face that, I mean, we're talking about, see, I had thought we were just talking about Graham versus Conner and those typical principles that we would apply anywhere. Traffic stop, kicking somebody out of this game. I think we are in a Graham v. Conner situation. We are just in a regular Fourth Amendment scenario because we are not in the educational mission school setting. Okay. That's what I understand. And that's where Curran says if there's any temporal distance between your resistance and our use of force, you can't. And it doesn't matter if you were handcuffed restraints. It just matters that you're not resisting. And I think in Curran she, everyone's conceded that she was restrained the first time, even though she wasn't in handcuffs, and I think that is factually similar to what we have here, which is, you know, a 200-pound officer is on top of this tiny high school girl, and she says, I was restrained, I can't really go anywhere. And then that's when another officer kicks her in the arm and breaks her phone and things like that. And that, to me, is an obvious case that you cannot use force there. Okay. Well, thank you. We have a few minutes left. Anything else? Any other questions? Thank you, counsel. Ms. James, you have some time for rebuttal. Thank you. I'd like to just briefly respond to a couple of points she raised. First, as you just heard, they argue that the school setting doesn't matter because this didn't happen in a classroom involving a teacher. It wasn't a disciplinary. It wasn't disciplinary. It wasn't educational. Respectfully, I would say that the bulk of cases from the circuit and the Supreme Court do not support that. First, the case I mentioned, Gonzalez v. Huerta, not during the school day, not involving a teacher, not involving a student. That's just a husband who came onto campus. The only school-related fact in that case was that it was on school property. Even the Morse v. Frederick case, bong hits for Jesus, not on school property. It involved a student at a school-sponsored event. So those were the two facts in that case. From this court, we have Morgan v. Swanson. That was a case where the candy canes, right? After school hours, but on the school lawn, involving a student. Those were the two facts there. The famous Supreme Court cases, right? We've got Lee. We've got Doe. Prayer at a football game, prayer at graduation. Football game, not during the school day, not even on campus, but involving students. Graduation, not during the school day, not on campus, involving students. So from those cases, we can glean some important facts. Was it on school property? Did it involve a student? Was it a school-sponsored event? Here, all of those are present. This was at the school gym involving a student and her principal at a school-sponsored basketball game. What cases do we have, and you'll know this better than I do, that involve a student on school property but police officers? So there are not two from the Fifth Circuit that don't involve school police officers from this court. However, there are lower court decisions out of this circuit that I think are instructive. So there's one from the Northern District, and then there's one from right here in New Orleans. The Northern District case is Brayden v. Waxahachie. So that was a situation where there was a student situation at a school, and so they called city cops. And the city cops came to the school to help with the situation. And in that case, the court said the cops were responding to a school official's request for help, so we have to analyze the case law in the school setting context. In the Louisiana case, Thomas v. City of New Orleans, as you can tell, those were city cops. Same kind of deal, school calls for help. There the court says claims about officers responding to a request for help from the school cannot be analyzed in a way that is divorced from the school setting. So if we even go to the extreme and we say, okay, these officers weren't school employees, which we believe they were, they are just security guards, right, they were responding to a request for help from the principal, and I think these cases clearly show we cannot analyze those claims in a way that is divorced from the school setting. Now I want to talk about briefly the case that she did cite to you, the Curran case, which she believes is the clearly established law. As she said, that case involved a student who was pushed into a wall after she was handcuffed. She said there was both pre-handcuff and post-handcuff. But the key in that case, as she said, was the temporal gap. So to help explain this, they cite to two other similar cases, Gary and Bush v. Strain from this court. Both involve uses of force after a suspect was handcuffed. So in all three cases, the court said, look, there was a large gap in time from when the resistance happened and the use of force occurred. So whatever justification may have been there initially has long since expired. First, as you pointed out, there's been no allegation that force was used after she was cuffed. I think that's undisputed. All of these allegedly happened prior to the handcuffing, so I don't even believe these cases. What do we know about the lapse of time? Very short. So, again, as— Do we know that? Go ahead, sorry. Do we know that? Here's what we know, all right. The video shows the time from right before the encounter, when the cops approach, and then when she's taken outside. And that time from when the cops approach to the exit of the door is about 10 seconds. Then we don't know what happens from the video, so we look at the declarations. If you look at the declarations, what does she say? She says, I was kicked, I was taken to the ground, they put their knee on me, you know, my arm was twisted and I was cuffed. The cops say essentially the same thing, as does Principal Golden. All of these facts seem to suggest this was a rapidly evolving, volatile situation that happened in a matter of seconds. There's not been any evidence— But is that disputed? I don't believe so. There's not any evidence in the record that a period of even two, five, ten minutes went by before these uses of force. And I also think it's undisputed they occurred prior to the handcuffing. So I simply don't believe the cases they've cited are factually similar enough to be instructive to this court or to the officers about whether or not their conduct was illegal. And that's all I have for you today. Thank you, Your Honors. Thank you, counsel, for a well-argued case on both sides. We'll take the matter under submission. The panel will take a 10-minute break before the third case.